Filed 12/6/23  P. v. Whitaker CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C096980 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE016486) |
| v. | |
| DEANTE DESHAWN WHITAKER, | |
| Defendant and Appellant. | |

A jury found defendant Deante DeShawn Whitaker guilty of first degree murder and found true the allegation he personally used a deadly weapon.  On appeal, defendant contends the trial court committed prejudicial evidentiary error, the prosecutor committed prejudicial error in closing argument, and the trial court abused its discretion in denying his motion for a new trial.  Defendant also contends the cumulative error requires reversal.  Finding no prejudicial error, we will affirm the judgment.

1

BACKGROUND

On August 24, 2019, defendant was driving by Capitol Casino in Sacramento with his six-year-old son D.J. in the car. At the same time, George Kouklis, a white man, was crossing the road outside the casino. Defendant had to stop his car to avoid hitting Kouklis. Kouklis yelled curse words at defendant, an African-American man: "You're F-ing close"; "Motherfucker, fuck you[,] and things like that"; and "[Y]ou fucking nigger."[1] Kouklis appeared angry; he "pulled out a hammer" and continued to curse at defendant. Yelling, he walked around to the driver's side, waving the hammer "like he wanted to hit the vehicle." According to surveillance videos played for the jury, the incident lasted approximately 10 seconds.

The incident occurred on a one-way street. After defendant drove past Kouklis, he drove up the block, turned left (using his turn signal), then circled the block. The 0.6-mile trip took approximately 1 minute 20 seconds, but Kouklis was still in the street, near an intersection, and just beyond a stop sign. Defendant sped toward Kouklis without slowing down, ran through the stop sign, and ran his car directly into Kouklis. The impact knocked Kouklis off his feet and into the air; he fell to the street as defendant drove away. Kouklis died in the hospital as a result of blunt force trauma to his head.

Defendant was subsequently arrested and charged with first degree murder (Pen. Code,[2] § 187, subd. (a)) and personal use of a deadly weapon (§ 12022, subd. (b)(1)).

Prior to trial, the People moved to exclude evidence Kouklis previously used the "N-word." The court found the evidence was irrelevant and granted the People's motion: "Without more I'm going to exclude it. If you've got something more you want me to hear about it, I'm happy to hear it, but at this point in time, I think it's just comments

---

[1] D.J.'s testimony was the only evidence that Kouklis used the "N-word."

[2] Further undesignated statutory references are to the Penal Code.

being made. I don't know if this was a product of a 415 between several homeless people. I have no idea what [the witness]'s basis is in indicating that he's heard this victim use that term before. I don't know how many times. I don't know where. I don't know when. I don't know what the circumstances were. I don't know if he was mumbling to himself. I don't know if he was in a fight with other people and they were using the N-word as well. I don't know any of that."

Defendant raised the issue again during trial. The court again refused to admit the evidence finding it lacked foundation and was "substantially more prejudicial than probative." Defendant raised the issue a third time after D.J. testified; the court still refused to admit the evidence.

In closing, defense counsel argued the jury should find defendant guilty of the lesser included offense of voluntary manslaughter. He argued defendant "lost his cool." Kouklis was acting "irrationally and scary." He cursed at defendant and D.J., and he used the "N-word" in front of D.J. "Where I grew up, if a white guy had walked up to a black guy and said something like that unprovoked, I would expect his face would get smashed in by a foot or a fist, or if the person was holding a knife, they would stab the guy who said it. If he was holding a gun, it wouldn't surprise me if the guy got shot. The word is filthy. And again, place the word in the context of everything going on."

The jury found defendant guilty as charged and found true the allegation defendant personally used a deadly weapon. Defendant filed a motion for a new trial, arguing the evidence established only voluntary manslaughter. The trial court found there was insufficient provocation for voluntary manslaughter:

"Using that degrading and disgusting word towards [defendant] must still be judged by an objective standard, meaning a reasonable person's standard. It's not [defendant]'s standard. It's a reasonable person's standard. Unfortunately, we know that that word continues to be used in a derogatory, disrespectful and demeaning manner in our society, but if every time that word was used it gave license to someone to strike out

3

and kill somebody, there would be just complete and utter mayhem, . . . so I can see why a jury would have rejected the voluntary manslaughter in this case.

"[¶] . . . [¶]

"Was it sufficient provocation? No. No. I just don't believe it was. . . .

"So I don't think the jury got it wrong. I think the jury got it right."

The court also addressed the cooling off period, after defendant's initial encounter with Kouklis:

"[W]hat I saw [defendant] do is make a number of turns, and I think we did have it down to the second, [counsel]. And I could be wrong, but wasn't it a little over a minute, [counsel]?

"[Counsel]: It was over a minute.

"THE COURT: So if I were to just take time right now and let 60 seconds tick by, I could do that and we could all understand really how long a minute is. Clearly, if you have your son in the car, that is sufficient, as angry as you may have been, to cool down and regain your senses. . . ."

"This case should never have happened. [Defendant] should never have taken those turns. He had time to think about it. . . . [¶] . . . [Defendant] took the opportunity to go around the block, and when he was in his most vulnerable position, bent over, rev up your car and run him over, with your son in the car."

The court denied defendant's motion: "I reviewed my notes very, very clearly in this case, and I just cannot in good conscience, following the oath that I took, find that the jury got this wrong. I think they got this right. . . . [T]here were so many opportunities for you not to do this, and now you sit here in front of me, convicted of a premeditated first degree murder, where you did have the opportunity to reflect. . . . I think you decided you were going to kill that man and you made a very quick decision to do so, and it was the wrong decision. . . . [¶] . . . It's the Court's view there was substantial evidence for first degree murder, and so I'm going to deny the motion."

4

The trial court subsequently sentenced defendant to an aggregate term of 26 years to life in state prison.

Defendant appeals.

## DISCUSSION

" 'Murder is the unlawful killing of a human being . . . with malice aforethought.' (§ 187, subd. (a).) 'Manslaughter is the unlawful killing of a human being without malice.' ([§ 192, subd. (a).) Manslaughter is a lesser included offense of murder, and a defendant who commits an intentional and unlawful killing but who lacks malice is guilty of voluntary manslaughter. Heat of passion is one of the mental states that precludes the formation of malice and reduces an unlawful killing from murder to manslaughter." (*People v. Nelson* (2016) 1 Cal.5th at 513, 538 (*Nelson*); *People v. Breverman* (1998) 19 Cal.4th 142, 153-154.)

Our Supreme Court has explained: "A heat of passion theory of manslaughter has both an objective and a subjective component. [Citations.] [¶] ' "To satisfy the objective or 'reasonable person' element of this form of voluntary manslaughter, the accused's heat of passion must be due to 'sufficient provocation.' " ' " (*People v. Moye* (2009) 47 Cal.4th 537, 549.) Legally sufficient provocation is that which " 'causes a person to act, not out of rational thought but out of unconsidered reaction to the provocation.' [Citation.] Further, the 'proper standard focuses upon whether the person of average disposition would be induced to react from passion and not from judgment.' " (*Nelson*, *supra*, 1 Cal.5th at p. 539.)

"For purposes of the heat of passion doctrine, 'provocation is sufficient not because it affects the quality of one's thought processes, but because it eclipses reflection. A person in this state simply reacts from emotion due to the provocation, without deliberation or judgment.' [Citation.] The standard requires more than evidence that a defendant's passions were aroused. The facts and circumstances must be

5

' "sufficient to arouse the passions of the ordinarily reasonable man." ' " (*Nelson*, *supra*, 1 Cal.5th at p. 539.)

As for the subjective element of voluntary manslaughter based on provocation, the high court has explained that the defendant "must be shown to have killed while under 'the actual influence of a strong passion' induced by such provocation." (*People v. Moye*, *supra*, 47 Cal.4th at p. 550; *Nelson*, *supra*, 1 Cal.5th at p. 539.) The court has emphasized that "[i]t is not sufficient that a person 'is provoked and [then] *later* kills.' " (*Nelson*, at p. 539.) Rather, where " ' "sufficient time has elapsed between the provocation and the fatal blow for passion to subside and reason to return, the killing is not voluntary manslaughter." ' " (*Moye*, at p. 550, quoting *People v. Breverman*, *supra*, 19 Cal.4th at p. 163.)

A.     *Evidentiary Error*

Defendant contends the trial court's exclusion of testimony that the victim said the "N-word" prior to the day he was killed violated defendant's right to due process and a fair trial. We disagree.

It is well settled that application of the ordinary rules of evidence does not implicate due process and is reviewed under the standard of *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Marks* (2003) 31 Cal.4th 197, 226-227.) "Although completely excluding evidence of an accused's defense theoretically could rise to this level, excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense." (*People v. Fudge* (1994) 7 Cal.4th 1075, 1103.)

Here, the jury heard testimony that Kouklis called defendant the "N-word," cussed at him, and even wielded a hammer in his general direction. The jury thus heard evidence in support of defendant's claim that he killed Kouklis in a heat of passion. Defendant's right to present a defense was not impaired by the trial court's decision to

6

exclude evidence Kouklis previously used the "N-word." Any error, therefore, is not constitutional. (See *People v. Fudge*, *supra*, 7 Cal.4th at p. 1103.)

Even assuming it was error to exclude evidence that Kouklis previously said the "N-word," such error was harmless because it is unlikely the jury would have reached a more favorable verdict absent that error. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.) First, defendant's argument was that calling him the "N-word" provoked him into killing Kouklis. Provocative and insulting words, however, are not objectively sufficient to provoke a reasonable person to lose reason and judgment. (See *People v. Najera* (2006) 138 Cal.App.4th 212, 216 [victim calling defendant a "faggot" insufficient for voluntary manslaughter].)

Moreover, assuming defendant could prove Kouklis's conduct was objectively sufficient to provoke a reasonable person, there was substantial evidence that, after his initial encounter with Kouklis, defendant not only had time to cool off but was acting with reason when he killed Kouklis. (See *People v. Beltran* (2013) 56 Cal.4th 935, 951.) The jury saw a video of defendant leaving the initial encounter, even using his turn signal to make a left turn. Such evidence demonstrates defendant was not acting without reason. Defendant then took nearly a minute and a half to drive 0.6 miles around the block before running through a stop sign and into Kouklis.

In short, on this record, it is unlikely the jury would have found defendant guilty of voluntary manslaughter instead of murder had the court allowed in evidence that Kouklis previously used the "N-word."

B.      *Prosecutorial Error*

Defendant also contends the prosecutor committed prejudicial error during rebuttal argument. Specifically, defendant argues the prosecutor misstated the law: "That's it. That's 12 seconds. Does that lead to provocation such that an average person would drive around the block .6 miles with or without a child in the car and murder someone? Obscure their judgment to negate the malice? No. And you know that. You know that."

7

This statement, which defendant argues was the cornerstone of the prosecution, wrongly advised the jurors that the standard for voluntary manslaughter was whether a reasonable person, given the circumstances, would murder someone. Defendant asserts the correct standard is whether the provocation would " 'render ordinary men of average disposition liable to act rashly or without due deliberation and reflection.' "

Trial counsel, however, did not object. Defendant thus forfeits this contention on appeal. (See *People v. Clark* (2016) 63 Cal.4th 522, 577 [preservation of prosecutorial misconduct claim on appeal requires timely objection and request for admonition].) Anticipating forfeiture, defendant alternately contends trial counsel was ineffective for failing to object. We are not persuaded.

To establish ineffective assistance, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that the deficient performance was prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.)

To establish prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 693; *People v. Ledesma*, *supra*, 43 Cal.3d at p. 217.) The defendant must show there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. (*Strickland*, at p. 694; *Ledesma*, at pp. 217-218.) A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Strickland*, at p. 694; *Ledesma*, at p. 218.)

" '[T]he decision facing counsel in the midst of trial over whether to object to comments made by the prosecutor in closing argument is a highly tactical one . . .' [citation], and 'a mere failure to object to evidence or argument seldom establishes counsel's incompetence.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 675.)

8

First, the jury was properly instructed on the elements of provocation (CALCRIM No. 522) and voluntary manslaughter (CALCRIM No. 570). To the extent the prosecutor's statement conflicted with these instructions, the jurors also were instructed that if the attorneys' comments on the law conflicted with the court's instructions, they must follow the instructions. We presume they did so, and defendant was not prejudiced by the prosecutor's comments. (See *People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

Second, any misstatement of law regarding provocation was harmless because "[i]n returning a verdict of first-degree murder, the jury expressly found that appellant premeditated and deliberated the killing . . . . And the evidence strongly supported the jury's conclusion. But such a 'state of mind, involving planning and deliberate action is manifestly inconsistent with having acted under the heat of passion – even if that state of mind was achieved after a considerable period of provocatory conduct – and clearly demonstrates that defendant was not prejudiced' by any misstatements of law by the prosecutor. (*People v. Wharton* (1991) 53 Cal.3d 522, 572.)" (*People v. Forrest* (2017) 7 Cal.App.5th 1074, 1086.)

## C. *Motion for a New Trial*

After the verdict, defendant moved for a new trial under section 1181, case (6), arguing the evidence "clearly shows" his offense was voluntary manslaughter, not first degree murder. On appeal, he argues denying his motion was contrary to the law and evidence. We disagree.

"In deciding a motion [for a new trial under section 1181, case 6], the trial court's function is to 'see that the jury intelligently and justly perform[ed] its duty and, in the exercise of a proper legal discretion, to determine whether there is sufficient credible evidence to sustain the verdict.' [Citation.] The trial court's duty is to review the evidence independently and satisfy itself that the evidence as a whole is sufficient to sustain the verdict." (*People v. Dickens* (2005) 130 Cal.App.4th 1245, 1251.) "The trial court has broad discretion in determining whether the evidence has sufficient probative

9

value to sustain the verdict [citation], and its order will not be reversed on appeal 'absent a manifest and unmistakable abuse of that discretion.' " (*Id.* at p. 1252.)

Where, as here, the trial court understood the scope of its discretion under section 1181, case 6, we are required to consider "the entire record in the light most favorable to the judgment below to determine whether it contains substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- from which a rational trier of fact could find defendant guilty beyond a reasonable doubt." (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1068-1069; *People v. Watkins* (2012) 55 Cal.4th 999, 1018-1020.) We conclude substantial evidence supports the conviction of first degree murder, not voluntary manslaughter, and that the trial court did not abuse its discretion in concluding the verdict was supported by the evidence.

Here, the only evidence of provocation was that Kouklis cussed at defendant and called him the "N-word," while waving a hammer in the direction of defendant's car. Whether that was sufficient provocation to cause defendant to act without reflection, there is substantial evidence he had sufficient time to, and indeed did, cool off. As discussed above, defendant drove 0.6 miles, used his turn signal, made several turns, and over a minute after the initial interaction, defendant drove his car through a stop sign and into Kouklis, killing him. Such evidence does not compel a verdict of voluntary manslaughter as a matter of law and does not require us to set aside the jury's verdict or the trial court's ruling on the motion for a new trial.

D.      *Cumulative Error*

Defendant also urges us to apply the cumulative error doctrine on the ground that the alleged trial errors had the cumulative effect of denying his right to a fair trial. Based on our review of the record, we conclude there was no error warranting reversal, whether considered separately or cumulatively. (*People v. Roybal* (1998) 19 Cal.4th 481, 531.) The premise behind the cumulative error doctrine is that, while a number of errors may be harmless taken individually, their cumulative effect requires reversal. (*People v.*

10

*Bunyard* (1988) 45 Cal.3d 1189, 1236; *People v. Cunningham* (2001) 25 Cal.4th 926, 1009.)  Even when evaluated collectively, any errors that occurred in this case were harmless.  Defendant was entitled to a fair trial, not a perfect one.  (*Cunningham*, at p. 1009.)

DISPOSITION

The judgment is affirmed.

/s/_____<br>Wiseman, J.*

We concur:

/s/_____
Robie, Acting P. J.

/s/_____
Krause, J.

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.